UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.G.,<br>          Plaintiff,<br>    v.<br>KILOLO KIJAKAZI, Commissioner of Social Security,<br>          Defendant. | Case No. 21-cv-02953-NC<br><br>**ORDER REMANDING CASE FOR FURTHER PROCEEDINGS**<br><br>RE: ECF 19, 22 |

K.G. appeals from an Administrative Law Judge's denial of her application for disability insurance benefits. K.G. argues that the ALJ erred by: (1) failing to fully and fairly develop the record; (2) improperly rejecting her testimony about the intensity, persistence, and limiting effects of her symptoms; and (3) failing to include all her limitations in his Residual Functional Capacity analysis and Vocational Expert hypotheticals, such that the ALJ's denial was not based on substantial evidence. K.G. also argues that the Appeals Council erred by denying her request for review after she submitted a Labor Market Study that contradicted Vocational Expert testimony. After reviewing the briefing and administrative record, the Court REMANDS the case for further proceedings.

**I.   BACKGROUND**

On April 22, 2019, K.G. filed an application for Title II benefits, alleging a

disability beginning on January 23, 2017. Administrative Record 49. K.G.'s claim was denied initially and upon reconsideration. AR 1, 22. After a hearing on July 16, 2020, the ALJ Michael Cabotaje again denied her claim on August 5, 2020. AR 15–23. K.G. appealed the denial to the Appeals Council, who denied her request for review. AR 1–3. K.G. now appeals to this Court. ECF 1. All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). ECF 6; ECF 8. The facts relevant to each argument are discussed in further detail in their respective sections.

## II. LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance").

Even when the ALJ commits legal error, the decision must be upheld if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Burch*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)).

## III. DISCUSSION

### A. ALJ's Duty to Develop the Record

K.G. first argues the ALJ erred by failing to fully and fairly develop the record. An ALJ has a "special duty to fully and fairly develop the record." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). "The ALJ is not a mere umpire at such a proceeding, but

2

has an independent duty to fully develop the record, especially where the claimant is not represented." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992). When a claimant is not represented by counsel, there is a heightened duty for the ALJ to "be especially diligent in exploring for all the relevant facts," and "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Higbee*, 975 F.2d at 561.

K.G. makes three arguments for how the ALJ failed to fully and fairly develop the record. First, K.G. argues that the ALJ failed to obtain statements from lay witnesses or K.G.'s medical sources. *Id.* Second, K.G. argues that the ALJ failed to question the vocational expert regarding the evidentiary basis for her testimony. *Id.* Third, K.G. argues that the ALJ failed to question K.G. about her activities. *Id.* at 18. The Court addresses each argument in turn.

### 1. Lay Witness and Medical Source Testimony

First, the Court finds that the ALJ did not err by failing to obtain statements from lay witnesses or K.G.'s medical sources. An ALJ's "responsibility for evidence" requires them to: (1) develop the record by obtaining medical records from the claimant's medical sources for at least twelve months prior to filing; (2) obtain a consultative examination and; (3) provide evidence about the existence of work in the national economy that the claimant can do. 20 C.F.R. § 404.1512(b)(1)–(3). Here, the ALJ obtained medical records dating back at least twelve months prior to K.G.'s application for benefits, considered a consultative examination, and provided evidence about the existence of suitable work through the testimony of the Vocational Expert (VE). AR 203–1033, 1040–63, 1068–1110 (medical records); AR 1034–39 (consultative examination); AR 42–47 (VE testimony). Even though the ALJ did not obtain additional statements from K.G.'s medical sources or lay witnesses, the ALJ met the three requirements within his responsibility for evidence. *See* 20 C.F.R. § 404.1512(b)(1)–(3).

### 2. Vocational Expert Testimony

Second, the Court finds that the ALJ did not err by failing to question the

3

Vocational Expert (VE) about the evidentiary basis for her testimony. "An ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the national economy, and need not inquire sua sponte into the foundation for the expert's opinion." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2018) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)). Here, the ALJ did not need to inquire sua sponte into the evidentiary basis for the VE's testimony, and therefore, did not err by failing to do so.

### 3. Ambiguous Evidence

Finally, the Court finds that the ALJ did err by failing to question K.G. about ambiguous statements that he relied on to determine she was not credible. After reviewing all the evidence relevant to a claim, an ALJ makes findings about what the evidence shows. 20 C.F.R. § 404.1520. If evidence is ambiguous, the ALJ will consider relevant evidence and evaluate if a determination can be made based on the available evidence. 20 C.F.R. § 404.1520(b)(1). If an ambiguity cannot be resolved from existing evidence, the ALJ must make efforts to obtain additional evidence. 20 C.F.R. § 404.1520(b)(3). "The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017).

Here, the ALJ erred by relying on ambiguous statements to conclude that K.G.'s testimony is inconsistent with her daily activities and, thus, not credible. The ALJ relied on K.G.'s statements about her ability to ride a bike and travel to Mexico to conclude that her testimony is inconsistent. At the hearing on July 16, 2020, the ALJ asked a series of questions about her activities: "So how does that affect your daily activities? . . . Tell me how it affects your hands . . . Do you write with your hands? . . . [W]hat is it about being at the computer that you can't do? . . . How's your walking?" AR 40–42. However, the ALJ did not question K.G. about her ability to ride a bike and travel, which he later relied to deny her benefits. Such questions could have clarified whether such activities are inconsistent with her symptom testimony. Thus, the ALJ erred by failing to question K.G. about the ambiguous statements which he relied on in his denial.

In conclusion, the ALJ's failure to obtain lay witness and medical source testimony

4

and failure to question the VE's evidentiary basis were not in error. However, the ALJ failed to fully and fairly develop the record because he did not question K.G. about the ambiguous statements which he relied on in his denial.

### B. ALJ's Rejection of K.G.'s Testimony

In addition, K.G. appeals the ALJ's decision on the grounds that the ALJ erred by failing to provide clear and convincing reasons for discounting her symptom testimony.

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . in reaching a conclusion as to whether [a claimant is] disabled." 20 C.F.R. § 404.1529(c)(3); *see Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (" . . . pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim"). "[A claimant's] symptoms, including pain, will be determined to diminish [a] capacity for basic work activities to the extent [the] alleged functional limitations and restriction due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter*, 806 F.3d at 492–93 (internal citation omitted). "General findings are insufficient." *Id.* at 493 (internal citation omitted). Rather, the Court "require[s] the ALJ to specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* at 489.

"In weighing a claimant's credibility, the ALJ may consider [the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony

5

and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

At the ALJ hearing, K.G. testified that she is disabled due to pain in her hands and feet. AR 39. She testified that she cannot use a computer for more than forty-five minutes and cannot sit or stand for "very long." AR 38. She testified that she has a "hard time" getting dressed and requires the assistance of her spouse. *Id.* Furthermore, she testified that her pain is "pretty constant" and that she "always ha[s] some amount of pain" but that computer work and housework cause swelling and increased pain. AR 39, 40. She testified that she cannot grasp due to "tremendous pain." AR 41. She testified that, as a result, she requires "help with groceries" and cannot write for long with her hands. AR 41–42. She testified that she cannot walk for more than ten or fifteen minutes without requiring a rest. AR 42. She testified that her medications are "not helping." AR 39. She testified to a "flare" in her pain that caused her to remain in bed over the last few days prior to the hearing. AR 39–40.

The ALJ determined that K.G. has several severe impairments, including rheumatoid arthritis. AR 17. However, the ALJ found that K.G.'s testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record." AR 21. Specifically, the ALJ found the following allegations not credible: (1) there are no times during which she is pain-free; (2) her medications no longer help her; (3) she has standing, walking, and sitting limitations. AR 20. The ALJ gave five reasons for discounting the allegations: (1) on May 19, 2019, K.G. indicated on a Pain Questionnaire that she could walk two miles; (2) K.G. indicated on May 19, 2019, that she could do errands without assistance; (3) K.G. indicated on March 5, 2018, that she could no longer ride a bike; (4) the record reflects improvement in symptoms with medications, such as on January 3, 2018; (5) K.G. went to Mexico at the alleged start of disability in 2017. AR 21. None of these reasons are sufficient to meet the "specific, clear and convincing" standard required to discount K.G.'s

6

testimony. *See Brown-Hunter*, 806 F.3d at 493.

### Ability to Walk Two Miles

First, K.G.'s testimony is not inconsistent with her prior statement that she could walk for two miles. AR 154. A claimant is not required to be "utterly incapacitated" to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "Many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest . . . " *Id.* Further, a claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Here, K.G. testified she could not walk more than ten or fifteen minutes without a break. AR 42. But the Questionnaire that the ALJ relied on to discredit her testimony did not ask how long she could walk without a break; it only asked how far she could walk. AR 154. Because K.G. could have taken multiple breaks throughout the two-mile-long walk, the ALJ erred in discounting K.G.'s testimony as inconsistent with the record.

### Ability to Go on Errands

Second, K.G.'s testimony is not inconsistent with her prior statement that she could go to the grocery store. AR 154. In the Questionnaire, K.G. indicated that she could go to the grocery store without assistance. *Id.* Over a year later, K.G. testified that she could not grasp and that she needed help with the groceries. AR 41. In addition to the fact that going to the grocery store and unloading groceries are different activities, K.G. testified the she was experiencing increased and more frequent pain and her medications were no longer helping in 2020. AR 39–40. Thus, the ALJ erred in discounting K.G.'s testimony as inconsistent with the record.

### Ability to Ride her Bike

Third, K.G.'s testimony is not inconsistent with her prior statement to Dr. Andrea Michelle Clarke that riding a bike exacerbates her pain and swelling. On March 5, 2018, Dr. Clarke performed a physical exam of K.G. and noted that K.G. complained that she had an "intense flare of [Rheumatoid Arthritis] lately" and that she "noticed riding her bike

7

or [standing] make her pain and swelling worse." AR 209–10. The ALJ relied on this note to conclude that K.G. "reported riding her bicycle on March 5, 2018" and to support his finding that her testimony at the hearing was not credible. AR 21. The ALJ did not ask K.G. when she last rode her bike, how often, and for what duration to clarify whether this statement indicates an activity inconsistent with her symptom testimony. *See* AR 27–48. Thus, the ALJ erred in discounting K.G.'s testimony as inconsistent with the record. *See Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) (finding the ALJ erred in concluding from "at best ambiguous" evidence and making "no effort to . . . elaborate further on that crucial question").

<u>Improvement with Medication</u>

Fourth, K.G.'s testimony is not inconsistent with her prior statement that she felt better after starting a new medication. On January 3, 2018, K.G. indicated to Dr. Madiha Latif that her "joints feel much better since starting [a new medication.]" AR 742. On July 19, 2020, K.G. testified that she "always [has] some amount of pain." AR 40. And she testified that her medications no longer alleviate her pain. AR 39, 46. In each statement, K.G. addressed her pain at that moment in time, and because two and a half years passed between the two statements, the ALJ erred in discounting K.G.'s testimony.

Moreover, K.G. reported chronic pain to an acupuncturist on the same day. AR 736–38. Prior to her appointment with Dr. Latif, Zaria Valentine treated K.G. with acupuncture for her pain. *Id.* Valentine also established a plan of care for "4 sessions total followed by a reassessment for medical necessity." AR 737. Thus, even when K.G. reported her joints feeling better with medication, she still sought additional treatment, suggesting her medication did not alleviate all her pain symptoms.

Furthermore, it is erroneous to reject a claimant's testimony merely because symptoms "wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an administrative law judge to pick out a few isolated instances of improvement over a period of months or years and to treat

them as a basis for concluding a claimant is capable of working." *Id.* "While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Id.* at 1018 (emphasis omitted).

Here, K.G.'s testimony is not inconsistent with her prior statement because rheumatoid arthritis waxes and wanes in severity, and, even if the medication allowed her to be pain-free at one time, she testified the medication was no longer effective in July 16, 2020. *See* AR 39, 40. Consequently, the ALJ erred in discounting K.G.'s testimony as inconsistent with the record.

### Ability to Travel

Fifth, K.G.'s trip to Mexico in January 2017 is not inconsistent with her testimony. To discount testimony because of the claimant's periodic restricted travel "trivializes the importance that we consistently have ascribed to pain testimony." *Howard*, 782 F.2d at 1488. A generalized statement that travel is inconsistent with a claimant's alleged limitations is insufficient without indication of what activities the claimant undertook or how much use of their hands were required during their travel. *M.H. v. Kijazaki*, Case No. 21-cv-01766-NC, 2021 U.S. Dist. LEXIS 231219, *7–8 (N.D. Cal. Dec. 2, 2021).

Here, the ALJ concluded that K.G.'s "decision to go on a vacation, especially one requiring international travel, tends to further suggest the alleged symptoms and limitations may have been overstated." AR 21. The ALJ's decision does not rely on any specific activities undertaken in Mexico or evidence about the use of her hands while in Mexico. K.G.'s travel to Mexico is not inconsistent with her testimony on July 16, 2020. Therefore, the ALJ erred in discounting K.G.'s testimony.

In sum, all five reasons given by the ALJ for discounting K.G.'s rheumatoid arthritis symptom testimony fail to meet the "specific, clear, and convincing" standard. *Brown-Hunter*, 806 F.3d at 493. The ALJ's rejection of this testimony was therefore in error. This error warrants remand.

9

**C. ALJ's Failure to Include K.G.'s Limitations in RFC and VE Evaluations**

Next, K.G. argues that, because the Residual Functional Capacity (RFC) and VE testimony did not include all her limitations, the ALJ's Step-Five finding is not supported by substantial evidence. To determine if an individual is "disabled" and eligible for benefits, an ALJ must conduct a five-step sequential process. 20 C.F.R. § 404.1520. At Step-Five, the ALJ considers their assessment of the claimant's RFC, age, education, and work experience to see if the claimant can adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can adjust to other work, the ALJ will find the claimant is not disabled. *Id.* On review, a court determines whether the ALJ's findings are supported by substantial evidence based on the record as a whole. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999); *see also Howard*, 782 F.2d at 1487 ("In assessing whether a finding is supported by substantial evidence, [the Court] must consider the record as a whole"). The administrative record for the Court to examine includes evidence submitted to and considered by the Appeals Council. *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1162 (9th Cir. 2012); *Lingenfelter*, 504 F.3d at 1030.

Here, because the ALJ erred in discounting K.G.'s testimony, his Step-Five finding may not include all of her limitations, and thus, is not based on substantial evidence.

**D. Appeals Council's Denial of Review**

Finally, K.G. challenges the Appeals Council's decision to deny review of her claim after she submitted additional evidence, namely a Labor Market Study, to it. The Appeals Council will review additional evidence if there is a reasonable probability it would change the outcome of the decision. 20 C.F.R. § 404.970(a)(5). Here, the Appeals Council found there was no "reasonable possibility that the additional evidence would change the outcome of the decision" and, thus, no "basis for changing the [ALJ's] decision." AR 1. However, the Appeals Council's decision not to review additional evidence is not reviewable by this Court. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231–32 (9th Cir. 2011) (finding the district court may review an "improperly rejected opinion in our overall review of the ALJ's final decision, not in review of the Appeals

Council's decision denying [claimant's] request for review"). Thus, the Court does not consider this challenge.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ erred in failing to provide specific, clear, and convincing reasons for rejecting K.G.'s testimony about the intensity, persistence, and limiting effects of her impairments. Accordingly, the Court REMANDS this case for the ALJ to reassess K.G.'s testimony about her symptoms. And if the ALJ credits any of K.G.'s testimony, the ALJ must re-evaluate his Step Five finding.

**IT IS SO ORDERED.**

Dated: June 21, 2022

_____
NATHANAEL M. COUSINS
United States Magistrate Judge